IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**

**Criminal No. 03-244-2**
**v.**                                                 **Civil Action No. 08-784**

**ANTHONY ASKEW**

**MEMORANDUM OPINION REGARDING
PETITIONER ANTHONY ASKEW'S MOTION TO VACATE
SENTENCE (DOC. NO. 222) AND RELATED MOTIONS**

I.       **Introduction**

Before the Court is petitioner Anthony Askew's Motion under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("Motion to Vacate")

(Doc. No. 222), with integral memorandum of law in support, and several related motions, to-

wit: Motion for the Appointment of Counsel (Doc. No. 223); Motion for Leave to Proceed in

Forma Pauperis (Doc. No. 224); Motion for Discovery Pursuant to Federal Rules of Civil

Procedure 26 and *Brady* Motion (Doc. No. 227); Motion for Summary Judgment (Doc. No. 256)

pursuant to Federal Rules of Civil Procedure 56; and a Motion for Evidentiary Hearing (Doc. No.

264).

After careful consideration of the Motion to Vacate, the government's response thereto,

petitioner's traverse reply, and the files and entire record in the case, this Court finds that certain

of petitioner's allegations, even if accepted as true, do not entitle him to relief, and that other of

his allegations cannot be accepted as true because they are contradicted by the record.

Accordingly, there is no need to conduct an evidentiary hearing, and the Court will deny the

Motion to Vacate and, with the exception of the motion for leave to proceed in forma pauperis,

will deny the related motions as moot or without merit.

## II.     Background

In 2002 and 2003, there was a series of armed robberies at numerous financial institutions in Western Pennsylvania that followed a remarkably similar pattern.  The modus operandi of these bank robberies was that two masked men would enter the bank, each with gun drawn, one of the men would cover the employees and patrons while the other jumped over the counter and riffled the drawers for cash, and then the two men would run to a waiting stolen vehicle and flee the scene.  The 18 count Superseding Indictment filed on March 2, 2004 charged four persons with various offenses stemming from six of these bank robberies, as follows:

- Dollar Bank in Fox Chapel, Pennsylvania; August 1, 2002.  Counts One through Three charged Anthony Williams and Maurice Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.[1]

- Dollar Bank, Penn Hills, Pennsylvania; September 3, 2002.  Counts Four through Six charged Anthony Williams and Maurice Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

- USAir Credit Union, Moon Township, Pennsylvania; September 21, 2002.  Counts Seven through Nine charged Anthony Williams and Anthony Askew (Maurice Askew's brother) with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and

---

[1] Each of the Counts also charged the defendants named therein with aiding and abetting liability under 18 U.S.C. § 2.

924(c)(1)(A)(ii), respectively.

- S&T Bank, Plum Borough, Pennsylvania; November 21, 2002.  Counts Ten through Twelve charged Anthony Williams and Anthony Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

- National City Bank, New Kensington, Pennsylvania; December 3, 2002.  Counts Thirteen through Fifteen charged Anthony Williams and Anthony Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

- S&T Bank, Murrysville, Pennsylvania; July 8, 2003.  Counts Sixteen through Eighteen charged Anthony Williams, Anthony Askew and Nicole Harris with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

Anthony Williams was the gunman who jumped the counter and took the cash while one or the other of the Askew brothers stood guard in each robbery.  Nicole Harris was the driver of the getaway car for the S&T bank robbery on July 8, 2003.  Williams and Harris entered into plea agreements with the government and testified against the Askew brothers at their jury trial in May/ June 2004.  The jury found the Askews guilty as charged on all counts of the Superseding Indictment, and this Court sentenced the two men as follows:

Maurice Askew (Counts One through Six):  Defendant was committed to the custody of the U.S. Bureau of Prisons for a term of imprisonment of 468 months, calculated as follows: 84

months at each of Counts One, Two, Four and Five, to be served concurrently to each other; 84

months (7 years) at Count Three, to be served consecutively to the preceding term of

imprisonment; and 300 months (25 years) at Count Six, to be served consecutively to the

preceding terms of imprisonment.  Additionally, the Court sentenced Maurice Askew to a term of

Supervised Release of 3 years at each of Counts One and Four, to run concurrently, and a term of

5 years at each of the remaining counts, to run concurrently, a special assessment of $600.00, and

restitution.

Anthony Askew (Counts Seven through Eighteen):  Defendant was committed to the

custody of the U.S. Bureau of Prisons for a term of imprisonment of 1124 months (over 93

years), calculated as follows: 140 months at each of Counts Seven and Eight, Ten and Eleven,

Thirteen and Fourteen, and Sixteen and Seventeen, to be served concurrently to each other; 84

months (7 years) at Count Nine,  to be served consecutively to the preceding terms of

imprisonment; 300 months (25 years) at each of Counts Twelve, Fifteen and Eighteen, to be

served consecutively to the preceding terms of imprisonment and to each other.  Additionally, the

Court sentenced Anthony Askew to a term of Supervised Release of 3 years at each of the bank

robbery counts, to run concurrently, and a term of 5 years at each of the armed bank robbery and

brandishing of firearms counts, to run concurrently, a special assessment of $1200.00, and

restitution.

On November 5, 2004, this Court entered an Order correcting the Askews' sentences:

Anthony's concurrent sentences of 140 months imprisonment and three years supervised release

at Counts Seven, Ten, Thirteen and Sixteen were vacated, as were Maurice Askew's concurrent

sentences of 84 months imprisonment and three years supervised release at Counts One and Four.

4

Sentences for bank robbery under 18 U.S.C. § 2113(a) could not be imposed in addition to the sentences on the armed bank robbery under 18 U.S.C. § 2113(d) involving the same bank.  See *United States v. Cesare*, 581 F.3d 206, 207 (3d Cir. 2009) ("The federal bank robbery statute makes each aspect of a bank robbery a separate offense. Therefore, bank robbery, 18 U.S.C. § 2113(a), is a lesser included offense of armed bank robbery, 18 U.S.C. § 2113(d). Because each count charged a crime defined by the statute, the District Court erred by imposing separate sentences for each – even though it ordered the terms of imprisonment to be served concurrently.") (citing *Government of Virgin Islands v. Dowling*, 633 F.2d 660, 668 (3d Cir. 1980).

For both Askew brothers, the main driver behind their substantial terms of imprisonment was the statutory consecutive sentences mandated by Congress because they brandished firearms in furtherance of the armed bank robberies.  See 18 U.S.C. § 924(c)(1)(A)(ii).[2]  18 U.S.C. § 924(c) provides, in relevant part:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug

---

[2] In *Simpson v. United States*, 435 U.S. 6 (1978), the Supreme Court held that in a prosecution growing out of a single transaction of bank robbery with firearms, a defendant may not be sentenced under both section 2113(d), allowing enhancement of the punishment for bank robbery when the robbery is committed "by the use of a dangerous weapon or device," and section 924(c), which provides that whoever uses a firearm to commit a felony for which he may be prosecuted in a federal court shall be subject to a penalty in addition to the punishment provided for the commission of such felony. Six years after *Simpson*, Congress amended § 924(c) to expressly provide that it applied to felonious crimes of violence including those which imposed enhanced punishment if committed by the use of a deadly weapon. By this amendment, Congress made clear that it intended the imposition of cumulative punishment for violation of armed bank robbery and use of a dangerous weapon during the bank robbery.

trafficking crime – . . .  (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . .

18 U.S.C. § 924(c)(1)(A).

Additionally, section 924(c)(C)(i) provides that in the case of a second or subsequent conviction under this subsection, the person "shall be sentenced to a term of imprisonment of not less than 25 years."  18 U.S.C. § 924(c)(C)(i).

The United States Court of Appeals for the Third Circuit consolidated the Askews' separate appeals, and affirmed the convictions and judgments of sentence in an opinion and order entered on October 26, 2006.  (Doc. No. 218).  On direct appeal, the Court of Appeals rejected the following issues raised by AnthonyAskew: (i) the district court erred in not suppressing the evidence seized from his apartment on July 8, 2003, the day of the armed robbery of the S&T Bank, Murrysville, Pennsylvania (as set forth in Counts Sixteen through Eighteen of the indictment, charging Anthony Williams, Anthony Askew and Nicole Harris) during the execution of the search warrant because the supporting affidavit did not establish probable cause for the search; (ii) the district court erred in allowing the government to introduce trial testimony of a positive voice identification by Mr. Wayne Fischer, who had been present during the July 8, 2003 S&T Bank robbery; (iii) the evidence was insufficient to sustain the convictions; and (iv) the joinder of Anthony's and Maurice's charges on separate bank robberies for trial was improper and the district court erred in refusing to sever their trials pursuant to Fed.R.Crim.P. 8(b).

As to the sufficiency of the evidence, the Court of Appeals for the Third Circuit outlined the evidence against the brothers:

> The only issue at trial was the identity of the people who committed the charged crimes. All other elements in connection with the charged crime were

6

stipulated prior to the close of the trial. *Anthony Williams tied Anthony Askew to each of the bank robberies the latter was charged with*. Williams testified that, as to each of those robberies, Anthony Askew had stolen a car the night before the robbery, and the next day Williams and Anthony Askew drove to the respective bank in the stolen car. Once at the bank, they entered carrying firearms, and Williams jumped over the teller counter to get the money from tellers while Anthony Askew controlled the lobby area at gunpoint. According to Williams, they fled in the stolen car, which they then abandoned.

> *That testimony would, by itself, be sufficient to convict Anthony Askew of each of the robberies he was charged with committing with Williams, but there is more*. Nicole Harris testified that she was the getaway driver in two of the four robberies, and that both Williams and Anthony Askew participated in the armed robbery of USAir Federal Credit Union and the S&T Bank in Murrysville. Accordingly, Anthony Askew's sufficiency argument is frivolous.

Opinion, October 26, 2006 (Doc. No. 218) at 7 (emphasis added).

As to the improper joinder issue, the Court of Appeals held as follows:

> Joinder of defendants is proper where they are charged with virtually identical schemes and where all of the schemes are linked together by a common third party. . . . Here, the Askew brothers robbed banks with a common actor, Anthony Williams. The same method of operation was employed to rob the banks, and the banks were all robbed during a similar time frame. Their conduct thus formed a series of criminal activities involving a common actor, common methods, and a common time frame. There was no violation of Rule 8(b).

Opinion, October 26, 2006 (Doc. No. 218) at 8.

## III.    Motion to Vacate

Anthony Askew filed a timely Motion to Vacate on June 6, 2008, which is now ripe for

decision.[3]  The Motion to Vacate, supported by thorough and well argued pro se memoranda of

law, raises six grounds for relief alleging ineffective assistance of counsel in violation of

_____

[3] Petitioner was given the requisite "Miller Notice," and on June 28, 2008, filed his Statement of Intent (Doc. No. 228) informing the Court that he wished to have his section 2255 Motion to Vacate addressed as filed.  The docket reflects a number of motions filed and resolved by the Court between the filing of the Motion to Vacate and the Court's decision today which are not material to the discussion or the decision.

7

petitioner's Sixth Amendment right to counsel (5 of the grounds) and prosecutorial misconduct

(1 ground), as follows:  (i) although trial counsel challenged the search and seizure of evidence

from petitioner's apartment at 1010 Maple Avenue, Turtle Creek, on the grounds that agents

failed to "knock and announce" and because it was not supported by probable cause, counsel

was, nevertheless, ineffective in failing to challenge the search and seizure on the basis that the

copy of the search warrant left by agents in his apartment was not signed by a judicial officer; (ii)

trial counsel was ineffective for failing to request a *Franks* hearing because the affidavit in

support of the search warrant was infused with false information; (iii) trial counsel was

ineffective in failing to move for severance of defendants because "it is not possible to find a

connecting thread running between" the offenses alleged against petitioner and his brother

Maurice on the face of the indictment; (iv) trial counsel was ineffective for failing to move to

suppress, object or move for mistrial on the basis that the voice identification by Wayne Fischer

was unreliable; (v) trial counsel was ineffective for failing to object to perjured testimony by

Anthony Williams and Nicole Harris; and (vi) it was prosecutorial misconduct for the AUSA to

introduce evidence of an unrelated prior conviction solely for the purpose of showing his

propensity to commit crime.  The government has filed its response at (Doc. No. 237), and

petitioner has filed a traverse brief at (Doc. No. 254).

**IV.     Standards for Reviewing Section 2255 Petitions**

   **A.     28 U.S.C. § 2255: Petition to Vacate, Set Aside, or Correct Sentence by
          a Person in Federal Custody**

Section 2255 of Title 28 of the United States Code provides that:

     (a) A prisoner in custody under sentence of a court established by Act of
   Congress  claiming the right to be released upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Further, section 2255 provides that unless the motion to vacate, files and records "conclusively show" that the petitioner not entitled to relief, the court shall:

cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b).

When a defendant brings a motion to vacate sentence pursuant to section 2255, the district court has discretion whether to conduct an evidentiary hearing.  *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citing *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)).  Exercise of that discretion is constrained by section 2255, however, which requires the district court to hold an evidentiary hearing "'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'"  *Id.* (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).  This is not a high bar for a movant to meet, especially since the district court, in considering a section 2255 claim, "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Id.* (quoting *Forte*, 865 F.2d at 62).

Thus, a section 2255 motion can be dismissed without a hearing only if (1) its allegations, accepted as true, would not entitle the petitioner relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.  *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).  A district court's decision not to hold an evidentiary hearing may be reversed for abuse of discretion if "the files and records of the case are inconclusive on the issue of whether movant is entitled to relief . . ."  *Id.* at 131 (citing *Solis v. United States*, 252 F.3d 289, 294-95 (3d Cir. 2001)).

### B.    Rules of Procedure for Section 2255 Proceedings

The Rules Governing Section 2255 Proceedings for the United States District Courts (hereafter "Section 2255 Rules") apply to proceedings on an application for relief under Section 2255.  Habeas corpus proceedings are *sui generis*.  *United States v. Bendolph*, 409 F.3d 155, 166 (3d Cir. 2005).  The Federal Rules of Civil and of Criminal Procedure may be applied in section 2255 proceedings, except to the extent they are inconsistent with the Section 2255 Rules, which will prevail in the event of inconsistency.  *Id.*; Section 2255 Rule 12 .

The Section 2255 Rules require the district court to conduct a prompt preliminary review of a motion to vacate sentence.  Section 2255 Rule 4(b) states, in pertinent part:

> If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response, within a fixed time, or to take such other action the judge may order.

Section 2255 Rule 4(b).

Rule 5(a) provides that the "respondent is not required to answer the motion unless a judge so orders." Section 2255 Rule 5(a).  In this case, this Court has directed the government to respond to petitioner's Motion to Vacate, which response has been filed and docketed at (Doc. No. 270).

The Supreme Court has stated that a habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Yet, discovery is not precluded entirely and Rule 6 of the Section 2255 Rules allows a court to "authorize a party to conduct discovery" under the Federal Rules of Civil or Criminal procedure, or in accordance with the "practices and principles of law," if the party is able to show "good cause" for the discovery requested.  Section 2255 Rule 6(a).  At a minimum, the petitioner must provide specific allegations from which the court may determine whether granting the request would enable the petitioner to demonstrate he or she is entitled to relief.  *Bracy*, 520 U.S. at 904.  Rule 6(a) also allows for the appointment of counsel under 18 U.S.C. § 3006A, if "necessary for effective discovery."  Section 2255 Rule 6(a).

Section 2255 Rule 7 provides that, as part of the screening process, "the judge may direct the parties to expand the record by submitting additional materials," and may require such materials to be authenticated, provided the court gives to the party against whom the additional materials are offered notice and an "opportunity to admit or deny their correctness."  Section 2255 Rule 7(a), (c).  Such materials include letters predating the filing of the motion, documents, exhibits and answers under oath to interrogatories propounded by the judge, and affidavits. Section 2255 Rule 7(b).

"If the motion is not dismissed, the judge must review the answer, any transcripts and

11

records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  Section 2255 Rule 8(a).  If the court determines that an evidentiary hearing is warranted, counsel must be appointed to represent petitioner at such hearing under 18 U.S.C. § 3006A, and the court should schedule the hearing "as soon as practicable after giving the attorneys adequate time to investigate and prepare."  Section 2255 Rule 8(c).

### C.    The Procedural Default Rule and the "Cause and Actual Prejudice" Standard

"Relief under 28 U.S.C. § 2255 is not available to correct errors that could have been raised at trial or on direct appeal."  *DiModica v. United States*, 2007 WL 2212853, at *2 (D.N.J. July 31, 2007) (citing *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993)).  If a defendant attempts to raise such errors in a section 2255 motion, the motion will be "procedurally barred."  *Id.* (citing *United States v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003)); *see also Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) ("Put differently, a movant has *procedurally defaulted* all claims that he neglected to raise on direct appeal.") (emphasis added).

However, "courts will exempt a movant from [the procedural default rule] if he can prove . . . that there is a valid cause for the default, as well as prejudice resulting from the default."  *Hodge*, 554 F.3d at 379.  As the *Hodge* case stated, plausible ineffective assistance of counsel claims that, if proven, would rise to the level of Sixth Amendment violations, constitute sufficient cause to excuse procedural default.  *Id*. (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) and *Wise v. Fulcomer*, 958 F.2d 30, 34 n. 9 (3d Cir. 1992)).

The "cause and actual prejudice" standard was formulated in *United States v. Frady*, 456

12

U.S. 152, 167-68 (1982), where the Supreme Court stated: "Under this standard, to obtain

collateral relief based on trial errors to which no contemporaneous objection was made, a

convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2)

'actual prejudice' resulting from the errors of which he complains."  To prove "actual prejudice,"

the movant must show that the alleged trial error "worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions," *id.* at 170, and

that there is a substantial likelihood that, absent the error, a jury would have acquitted him, *id.* at

172.

> **D.** **Ineffective Assistance of Counsel**

In *Massaro v. United States*, 538 U.S. 500 (2003), the Supreme Court held that the

procedural default rule was neither a statutory nor constitutional requirement, but rather, a device

used by courts to promote judicial economy and the finality of judgments.  *Id.* at 504.  The Court

further held that "an ineffective-assistance-of-counsel claim may be brought in a collateral

proceeding under § 2255, whether or not the petitioner could have raised the claim on direct

appeal."  *Id.*  The standard for deciding an ineffective-assistance-of-counsel claim remains the

less stringent two-pronged test set forth by the Supreme Court in *Strickland v. Washington*, 466

U.S. 668 (1984).

In order to succeed on such a claim, a defendant must show (1) that his or her counsel's

performance was deficient and (2) that he or she was prejudiced by it.  *Lilly*, 536 F.3d at 195

(citing *Strickland*, 466 U.S. at 687).  The United States Court of Appeals for the Third Circuit

has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before

examining the performance of counsel prong 'because this course of action is less burdensome to

13

defense counsel.'"  *Booth*, 432 F.3d at 546 (quoting *McCoy*, 410 F.3d at 132 n.6).

Under the first prong of the *Strickland* test, "an attorney renders ineffective assistance when his performance 'f[alls] below an objective standard of reasonableness,' given the particular circumstances of the case at hand."  *Hodge*, 554 F.3d at 379 (quoting *Strickland*, 466 U.S. at 688).  In reviewing counsel's performance, the court must be "highly deferential," which entails "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689 (quoted in *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007)).  In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* (quoted in *Hankerson*, 496 F.3d at 310).  To rebut this presumption, the movant "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy."  *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).  However, the reviewing court may not indulge in hindsight or "engage in speculation about how the case might best have been tried."  *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998).

Under the prejudice prong of the *Strickland* test, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.'"  *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694).  Accordingly, the movant will not be entitled to relief "unless [he or she] affirmatively establishes the likelihood of an unreliable verdict."  *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993).

The *Strickland* test applies to the performances of both trial and appellate counsel. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004); *United States v. Gray*, 558 F.Supp.2d 589, 595 (W.D. Pa. 2008); *Showers v. Beard*, 586 F.Supp.2d 310, 330 (M.D.Pa. 2008). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see *Jones v. Barnes*, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). "The test for prejudice in the appellate context is not whether petitioner would likely prevail upon remand, but whether the sentence or judgment would likely have been reversed and remanded if the issue had been raised on direct appeal." *Id.* (citing *United States v. Mannino*, 212 F.3d 835, 847 (3d Cir. 2000)).

Appellate counsel is not obligated to raise all issues, but may select those which maximize the likelihood of a successful appeal. *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance be overcome." *Smith*, 528 U.S. at 288. Thus, to show that appellate counsel was ineffective, "a defendant must do more than show that counsel failed to raise every non-frivolous issue." *Gray*, 558 F.Supp. 2d 595. Furthermore, a defendant who claims to have been prejudiced by ineffective assistance of appellate counsel "must show that 'there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard.'" *Id.* (quoting *Mannino*, 212 F.3d at 845).

15

**V.      Application to Petitioner's Section 2255 Motion to Vacate Sentence**

**A.      Ineffective Assistance of Counsel Regarding "Unsigned" Search Warrant**

Mr. Askew first argues that Special Agent McGlennon had an obligation under the
Constitution of the United States and Federal Rule of Criminal Procedure 41 to show him a
signed search warrant before or during the search of his residence, as he requested, and
speculates that McGlennon deliberately chose not to do so and, instead, simply left an unsigned
copy of an unauthorized search warrant on the coffee table, in violation of the Fourth
Amendment.  Petitioner argues his trial counsel was ineffective in failing to move to suppress the
evidence taken from his residence at 1010 Maple Avenue on this basis.  The evidence included a
black bag containing "cash money," other "cash money" on the bed and in an envelope, a police
scanner, and a black and beige bag.  The "cash money" amounted to $26,586, a bit less than half
of the proceeds of the S&T Bank robbery on July 8, 2003.

In support, Mr. Askew attaches to his Motion to Vacate (i) a color photograph, Exhibit 3,
Appendix to Motion to Vacate (Doc. No. 223-4, at page 5 of 16) of an unsigned search warrant
(i.e., unsigned by a United States Magistrate Judge) captioned "In the Matter of the Search of the
Premises Known as Apt. 2, 1010 Maple Avenue, Turtle Creek, PA," and docketed at 2:03-mj-
00223 - RCM-1, and of the inventory receipt which were left side-by-side on his coffee table the
day of the search and seizure, and (ii) a black and white copy of a nearly identical search warrant
as that depicted in the color photograph with the same caption and docket number, but bearing
the signature of Robert M. Mitchell, United States Magistrate Judge.  Exhibit 4, Appendix to
Motion to Vacate (Doc. No. 223-4, at page 6 of 16).  Petitioner argues that because the copy of
the search warrant was unsigned, it was therefore unauthorized and the search was therefore

16

unlawful, and that this amounted to a willful deprivation of his Fourth Amendment rights, which required the exclusion of the evidence unlawfully obtained.  More importantly, petitioner asserts that counsel's failure to move to suppress the physical evidence and a statement he made to officers as a result of the unlawful search in violation of the Fourth Amendment deprived him of his Sixth Amendment right to effective counsel.[4]

Petitioner's speculation about Special Agent McGlennon's motives is not supported by the record, and even if it were, it would be immaterial.  The Court assumes the truth of petitioner's averments that Special Agent McGlennon deliberately refused to show him a copy of the search warrant even though he (Mr. Askew) requested to see it, and instead chose to leave an unsigned copy of the search warrant  along with a property receipt at the conclusion of the search and seizure.  However, neither the Fourth Amendment nor Fed.R.Crim.P. 41 requires the Magistrate Judge to actually sign the warrant (although that is certainly the preferred practice), nor do they require that an officer show a signed copy of the search warrant to the resident of the place being searched prior to executing the warrant.

The Fourth Amendment provides:

---

[4]  A Fourth Amendment challenge to a search and seizure is not cognizable, per se, on a habeas corpus petition, where the petitioner had a full and fair opportunity to make such challenge in the trial court and on direct review.  *Stone v. Powell*, 428 U.S. 465 (1976) (where petitioner had opportunity for full and fair litigation of a Fourth Amendment claim, prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial).  However, the Sixth Amendment right to effective counsel addresses different concerns and affords different protections to the accused, and is properly raised in a habeas corpus proceeding alleging ineffective assistance of counsel in failing to move to suppress evidence obtained in violation of the Fourth Amendment. *Kimmelman v. Morrison*, 477 U.S. 365 (1986) ( restrictions on federal habeas review of Fourth Amendment claims announced in *Stone v. Powell* did not extend to petitioner's Sixth Amendment claims of ineffective assistance of counsel).

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Fed.R.Crim.P. 41 provides, in relevant part:

Rule 41. Search and Seizure
*   *   *

(d) Obtaining a Warrant.

(1) In General. After receiving an affidavit or other information, a magistrate judge . . . must issue the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device.

(2) Requesting a Warrant in the Presence of a Judge.

(A) Warrant on an Affidavit. When a federal law enforcement officer or an attorney for the government presents an affidavit in support of a warrant, the judge may require the affiant to appear personally and may examine under oath the affiant and any witness the affiant produces.

(B) Warrant on Sworn Testimony. The judge may wholly or partially dispense with a written affidavit and base a warrant on sworn testimony if doing so is reasonable under the circumstances.
*   *   *

(e) Issuing the Warrant.

(1) In General. The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.

(2) Contents of the Warrant.

(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and

(iii) return the warrant to the magistrate judge designated in the warrant.
*   *   *

(f) Executing and Returning the Warrant.

(1) Warrant to Search for and Seize a Person or Property.
(A) Noting the Time. The officer executing the warrant must enter on it
the exact date and time it was executed.
(B) Inventory. An officer present during the execution of the warrant must
prepare and verify an inventory of any property seized. The officer must do so in
the presence of another officer and the person from whom, or from whose
premises, the property was taken. If either one is not present, the officer must
prepare and verify the inventory in the presence of at least one other credible
person. . . .
(C) Receipt. The officer executing the warrant must give a copy of the
warrant and a receipt for the property taken to the person from whom, or from
whose premises, the property was taken <u>or leave a copy of the warrant and receipt
at the place where the officer took the property.</u>
(D) Return. The officer executing the warrant must promptly return it –
together with a copy of the inventory – to the magistrate judge designated on the
warrant. The judge must, on request, give a copy of the inventory to the person
from whom, or from whose premises, the property was taken and to the applicant
for the warrant.

Fed.R.Crim.P. 41(d), (e) and (f) (emphasis added).

Nothing in the Constitution or Rule 41 requires the Magistrate Judge to *sign* a warrant,

although he or she must *issue* a warrant upon probable cause based on oath or affirmation.

Nothing in the Constitution or Rule 41 requires the executing officers to show a resident a copy

of the search warrant before or during the search, although Rule 41(f)(1)(C) does require the

officer to *either* give a copy of the warrant and a receipt for the property taken to the person from

whom, or from whose premises, the property was taken, <u>or</u> leave a copy of the warrant and

receipt at the place where the officer took the property.  Special Agent McGlennon chose to leave

a copy of the search warrant and property receipt, in full compliance with Rule 41(f)(1)(C).

Petitioner suggests there was some hanky-panky or doctoring of evidence, in that the

photograph of the copy of the search warrant left at his residence (Exhibit 3 to his Motion to

Vacate) was not signed by the Magistrate Judge and blanks had been filled in with blue ink, whereas the blanks on the signed copy of the search warrant (Exhibit 4 to his Motion to Vacate) are filled in with black ink.

In the absence of any hint on the record of evidence tampering, the Court finds nothing suspicious about a "blue ink" unsigned warrant being left at petitioner's residence while other copies of the signed warrant were all in black ink.  Moreover, the Court notes that the docket at 2:03-mj-00233 - RMJ-1 indicates that the search warrants were presented to United States Magistrate Judge Robert M. Mitchell on July 8, 2003, who determined there was probable cause for the search and seizure of evidence and issued the warrants.  The docket entries also explicitly state that the search warrants had been signed and issued by the Magistrate Judge, and testimony of three agents who executed the search warrant all testified consistently that they had applied for search warrants on July 8, 2003, and that the Magistrate Judge had approved and issued them that day, and FBI Agent Kenneth Werstak testified that the search warrant had been signed by United States Magistrate Judge Mitchell.  Notes of Testimony, Suppression Hearing,  May 25, 2004 (Doc. No. 141), at 45-46.

Even though the copy of the search warrant left at petitioner's residence was unsigned, that is not a violation of the Fourth Amendment or Rule 41, assuming for the sake of argument only that Rule 41 required a signed copy be left behind, such a "defect" would be a technical one, which does not invalidate the search or require suppression of evidence.  See *United States v. Martinez-Zayas*, 857 F.2d 122 (3d Cir. 1988) (even if search warrant issued by a bail commissioner violated Rule 41, such violation was not of a constitutional magnitude and thus did not justify exclusion of evidence seized pursuant to warrant; there was no evidence to

indicate that but for issuance of warrant by bail commissioner, search might not have occurred), *overruled on other grounds in United States v. Chapple*, 985 F.2d 729, 731 (3d Cir. 1993).  As the Court of Appeals stated in *Martinez-Zayas*, when a Rule 41 violation is not of constitutional magnitude, "violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule."  857 F.2d at 136 (citing *United States v. Burke*, 517 F.2d 377, 386-87 (2d Cir. 1975)).   See also *United States v. Hall*, 505 F.2d 961 (3d Cir. 1974) (violation of Rule 41(d), "which mandated that the officer executing a search warrant properly inventory the property taken, did not automatically result in the suppression of that property as evidence" and any irregularity in officer's inventory procedure case was "not 'constitutionally significant' under the Fourth Amendment"); *United States v. Lipford*, 203 F.3d 259, 269-70 (4th Cir. 2000) (fact that police officer had provided defendant with unsigned copy of search warrant, when the original had in fact been signed, did not require suppression of evidence obtained in search, which "was, at most, a technical violation of Federal Rule of Criminal Procedure 41(d), and not a violation of the Fourth Amendment.  Absent a demonstration of prejudice or bad faith - neither of which is present here - suppression of evidence is not the proper remedy"); *United States v. Jackson*, 617 F.Supp.2d 316 (M.D. Pa. 2008) (collecting cases) (unsigned search warrant contained sufficient indicia of issuance to satisfy Fourth Amendment requirements, and in any event, the good faith exception to the exclusionary rule applied).[5]

---

[5] Petitioner also argues that his statements to police after his arrest on July 8, 2003, must be suppressed as the fruit of the poisonous tree, i.e., the unlawful search and seizure.  This argument fails because the tree was not poisonous.

**B.      Ineffective Assistance of Counsel for Failing to Request *Franks* Hearing**

Askew next alleges that his trial counsel was ineffective in not requesting a *Franks*
hearing on the grounds that the affidavit of probable cause to support the search warrant
contained false and misleading information.  In *Franks v. Delaware*, 438 U.S. 154, 165 (1978),
the United States Supreme Court provided a limited opportunity for defendant to dispute the
truthfulness of an affiant's statements in an affidavit of probable cause.  *United States v. Conley*,
856 F.Supp. 1034, 1040 (W.D. Pa. 1994).

Pursuant to the dictates of *Franks* and its progeny, the Fourth Amendment requires that a
hearing be held at defendant's request only where he or she makes a substantial preliminary
showing that the affiant included in a search warrant affidavit a false statement, knowingly or
intentionally, or with reckless disregard for the truth, and that the challenged false statements
were essential to the Court's finding of probable cause.  *Franks,* at 155-156; *United States v.
Calisto*, 838 F.2d 711, 714 (3d Cir. 1988).  Although *Franks* dealt only with misstatements, the
*Franks* test also applies to situations where affiants have allegedly omitted material information
from affidavits.  *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993).

Where a defendant demonstrates that the affiant made a misrepresentation, the Court
must determine if the misrepresentation was material, and if so, whether the affidavit would still
state probable cause if the correct information were included.  *Frost*, at 742-43.  To the extent a
defendant demonstrates that there were omissions in the affidavits, the Court must determine
whether the omissions were material, and if so, whether the affidavits would have provided
probable cause if the omitted material had been disclosed.  *Calisto*, 838 F.2d at 715.

In order to succeed in a request for a hearing, defendant's attack must be "more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks,* at 171. Rather, defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks,* at 171.

As the Court of Appeals for the Third Circuit recognized in *United States v. Yusef*, 461 F.3d 374, 383 (3d Cir. 2006), in order to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid, "[f]irst the defendant must make a 'substantial preliminary  showing' that the affidavit contained a false statement, which was made knowingly or in reckless  disregard for the truth, which is material to the finding of probable cause." In *Yusef*, 461 F.3d at 383, the Court further found that: "[a]t the hearing the defendant must ultimately prove by a preponderance of the evidence that: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions, were material or necessary to the probable cause determination."  Negligence or innocent mistake is insufficient. *Id.*, 461 F.3d at 383.

As previously noted, on direct appeal, the Court of Appeals for the Third Circuit found that the affidavit supported probable cause for issuance of the warrant, stating as follows:

> A. Probable Cause for the Search Warrant.
>
> Anthony Askew argues that the district court erred in not suppressing the evidence seized from his apartment during the execution of the search warrant because the supporting affidavit did not establish probable cause for the search.
>
> *    *    *
>
> Anthony Askew claims the warrant was not based upon probable cause

because the only allegations in the affidavit linking his apartment to the July 8, 2003 bank robbery were as follows: (1) the FBI was investigating a series of bank robberies committed by armed African-Americans whose method of operation was identical to the one described in the affidavit; (2) Maurice Askew and Anthony Williams were suspects in those bank robberies; and (3) cell phone records indicated that Maurice Askew had called Anthony Askew at some undetermined time. According to Anthony, this is not sufficient to support a search of his apartment. However, the affidavit contained much more than the meager allegations Anthony relies upon.

The affidavit also set forth the following:

▸ the S & T Bank in Murrysville had been robbed earlier that day by two armed African-American males who left the bank with the money in a black duffel bag and escaped in a stolen Buick;

▸ shortly after the robbery, an eyewitness saw a blue-green Chevy Suburban followed by a Buick pull off into a church parking lot approximately one mile from the site of the robbery;

▸ the FBI had been investigating other bank robberies in the area whose methodology was substantially similar to the robbery at the S & T Bank in Murrysville and Anthony Williams and Maurice were among the suspects in those robberies;

▸ phone records revealed calls between Maurice Askew and Anthony Askew;

▸ Anthony Williams had access to a blue-green Chevy Suburban;

▸ shortly after the robbery at issue, police determined that the blue-green Chevy Suburban was not at Williams' residence, but it returned there after the robbery;

▸ at approximately 1:15 p.m. on July 8, 2003, police conducting a surveillance of Williams' residence reported that three African-Americans left Williams' residence in the blue-green Chevy Suburban and traveled to Anthony Askew's residence; and

▸ an individual got out of the blue-green Chevy Suburban carrying a black duffel bag and entered Anthony Askew's residence with the bag and remained there, and the other occupants of the Suburban returned to Williams' residence.

These averments were sufficient to allow the magistrate judge to conclude that there was a substantial likelihood that evidence relating to the July 8, 2003 bank robbery could be found at Anthony Askew's apartment. Accordingly, the resulting search of his apartment was supported by probable cause.

*United States v. Askew*, 203 Fed. Appx. at 415-16.

In this case, Mr. Askew focuses his argument on the allegations made in paragraph 6 of the affidavit which, specifically, states:

> FBI established surveillance at Ault Drive and at 1:15 p.m. on July 8, 2003, reported that three black subjects left that residence, got into the Suburban and traveled to Apartment #2-1010 Maple Avenue, Turtle Creek. Once at that address, a *black female got out of the Suburban carrying a black vinyl duffle bag and entered 1010 with the bag*. At this point, she remains there; the other occupants of the Suburban drove back to 411 Ault Drive and remain there as of this point.

(emphasis added)

Askew argues that the affiant, Special Agent Thomas Olohan, deliberately misstated in his affidavit that a black female with a black bag entered 1010 Maple Avenue in order to convince the Magistrate Judge that there was probable cause to enter and search that residence, and that counsel should have moved to suppress on that grounds.  This issue is without merit.

First, the Court finds no evidence on the record that Special Agent Olohan deliberately or recklessly made falsehoods in his affidavit. The operative fact is that agents observed a vehicle that was associated with the robbery arrive at the location of petitioner's residence, saw someone exit that vehicle carrying a black bag similar to one used in the bank robbery, and enter the residence at 1010 Maple, where Anthony Askew's apartment was located. The only "error" in the affidavit seems to be the gender of the individual who left the vehicle and entered the residence.

Agent Olohan did not testify  with respect to this matter, and it is unclear where he obtained that information.  Another agent, Special Agent  Steven Bielich, did testify at the trial and indicated that he could not determine the sex of the person who entered 1010 Maple Avenue. Notes of Testimony, Trial, May 25, 2004 (Doc. No. 141) at 95-100.  Evidently, something was

25

lost in the translation when investigating agents communicated the facts to Special Agent
Olohan, because he wrote in his affidavit that a black *female* had exited the vehicle and entered
the 1010 Maple residence.  Without more, this Court finds that any error or misstatement with
regard to the gender of the person exiting the vehicle with a black bag was inadvertent or
mistaken.  See *Yusef*, 461 F.3d 384 (agent did not recklessly supply false information in light of
his investigation: "District Court erred in concluding that the statements in the affidavit were
made recklessly, particularly because the District Court did not take into account the nature and
source of the information obtained by Agent Petri. Courts have routinely recognized a distinction
between information provided by an informant and that provided by a law enforcement officer or
other government agency.").

Moreover, this "false statement" is immaterial to the determination of probable cause.
Excising the word "female" from the affidavit, it obviously continues to state probable cause to
search petitioner's residence at 1010 Maple Avenue, as the Court of Appeals' recitation of the
facts set forth in the affidavit makes plain.

Because a motion for a *Franks* hearing would not have been granted, and if it were, it
would not have born fruit, petitioner cannot demonstrate any prejudice from his attorney's
"failure" to request such hearing.

### C.      Ineffective Assistance of Counsel for Failing to Move for Severance

There is a short answer to petitioner's third ground for relief, ineffective assistance of
counsel in failing to move for severance of his case from Maurice's case, since the offenses were
completely distinct:  the United States Court of Appeals for the Third Circuit has already decided

that issue against him on direct appeal.  That Court considered the Askews' argument that their

joinder under Fed.R.Crim.P. 8 was improper because there were six separate bank robberies, the

robberies were unrelated, there was no allegation of a conspiracy tying each of them to all of the

robberies, no common scheme or plan was alleged, nor was there any allegation of a joint

undertaking directed toward a common goal.

In rejecting that argument, the Court of Appeals held that joinder of defendants is proper

where they are charged with virtually identical schemes and where all of the schemes are linked

together by a common third party, and that in this case, the brothers' conduct formed a series of

criminal activities involving a common actor, common methods, and a common time frame.

Hence, there was no violation of Rule 8(b).  *Askew*, 203 Fed. Appx. 418.  That determination

remains the law of the case, and petitioner cannot revisit the underlying issue by way of a Sixth

Amendment claim of ineffective assistance of counsel.

### D.    Ineffective Assistance of Counsel for Failing to Move to Suppress, Object or Move for Mistrial on the Basis That Voice Identification Was Unreliable

Petitioner's fourth ground for relief is that he was deprived of the effective assistance of

counsel when his attorney failed to challenge an inherently unreliable voice identification that

was used to identify him as the robber in one of the incidents.  While the Court finds that

petitioner meets the deficient performance prong of the *Strickland* test in this regard, he cannot

meet the prejudice prong.

This Court overruled trial counsel's objection to the voice identification on Fourth and

Fifth Amendment grounds, and the Court of Appeals affirmed that ruling, stating as follows:

> Anthony Askew argues that the district court erred in allowing the
> government to introduce trial testimony of a voice identification by Wayne

27

Fischer, who had been present during the July 8, 2003 robbery at the S & T Bank in Murrysville. Fischer testified that he had previously heard Anthony Askew's voice, and that it matched the voice of one of the armed bank robbers at the S & T Bank who had spoken directly to him during the robbery. Fischer was able to make the comparison because he was present at the suppression hearing and heard Anthony Askew testify. [FN3] Anthony claims that evidence violated his Fifth Amendment privilege against self-incrimination and interfered with his right to challenge an unreasonable search under the Fourth Amendment by using his own testimony against him at trial. Both arguments are meritless.

> [FN3] Fischer did not testify that he heard Anthony Askew's voice during the suppression hearing. At the district court's direction, he testified that he heard the voice at some undetermined time and recognized it as the voice of one of the robbers.

> The Fifth Amendment privilege against self-incrimination protects a defendant from being compelled to provide testimonial evidence against him/her self. It does not shield a defendant from producing real or physical evidence. . . . . Moreover, it is a "well-settled rule that the sound of a defendant's voice, even if heard during privileged communications, is not itself testimonial, and therefore is not protected by the Fifth Amendment privilege against self-incrimination." . . . Since a voice exemplar can be compelled under the Fifth Amendment, there is clearly no constitutional violation when a witness compares a defendant's voice to the voice of someone the witness heard during a bank robbery. . . .

> The second prong of Anthony Askew's challenge to the voice identification is equally meritless. He relies on the Supreme Court's decision in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), to support his claim that the voice identification interfered with his right to challenge an unreasonable search under the Fourth Amendment because it used his own testimony against him at trial. . . . The dispute [in *Simmons*]concerned the substance of a defendant's pre-trial testimony, and the issue was whether the substance of a defendant's statements during a suppression hearing could later be used against him at trial without violating the Fifth Amendment guarantee against self incrimination. That is not the situation here, and we are not persuaded by Anthony Askew's attempt to link the holding of *Simmons* to the facts before us here.

*Askew*, 203 Fed. Appx. at 416-17 (most citations omitted).

Petitioner now argues that the AUSA's conduct in having Mr. Fischer "show up" at the suppression hearing, unbeknownst at that time to him or counsel, at which he testified was

28

inherently suggestive and unreliable, and that counsel should have mounted a challenge to Mr.

Fischer's in court identification of his voice as being that of the robber.

**Deficient performance**

As the United States Court of Appeals for the Third Circuit stated in the *Thomas v.*

*Varner* case:

> [W]e agree with the District Court that failure to move to suppress or otherwise object to an in-court identification by the prosecution's central witness, when there are compelling grounds to do so, is not objectively reasonable representation, absent some informed strategy.  See *Morrison v. Kimmelman* (*Morrison*), 752 F.2d 918, 922 (3d Cir. 1985) (suggesting that "proper norms of advocacy" required a "timely [motion] to suppress" where there was a valid basis for suppression),  *aff'd on other grounds* 477 U.S. 365 (1986) (*Kimmelman*).  . . . Of course, it would not be objectively unreasonable for counsel to decline to make a motion to suppress during a trial when either the motion is plainly without merit or the evidence is of little probative value. Here, however, that is not the case, as the motion was colorable, given Fuller's failure to make an identification at the pre-trial hearing and his testimony regarding the photo arrays and the lack of any evidence other than Young's testimony connecting Thomas to the shooting.

428 F.3d 491, 501-02 (3d Cir. 2005) (parallel and other citations omitted).

Undue suggestiveness of a line-up or show-up is not, standing alone, sufficient to

suppress an identification, and in order to determine whether a motion to suppress would have

been granted, a court "must determine (1) whether the identification process was unduly

suggestive and, if so, (2) whether the totality of the circumstances nonetheless renders the

identification reliable." *Id*. at 503 (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)).  In *Biggers*,

the Supreme Court held that the factors to be considered in evaluating the likelihood of

misidentification include (1) the opportunity of the witness to view the accused at the time of the

crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the

criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.  *Id*.

While it is not free from doubt, the Court will assume for purposes of the *Strickland* analysis, that counsel's performance was deficient in not challenging the voice identification as inherently unreliable.  At a minimum, an argument for suppression on that basis would have been beyond colorable.

The unannounced "show-up" of Mr. Fischer at petitioner's suppression hearing to hear him speak in open court is certainly suggestive – Mr. Fischer knew that petitioner was the defendant in the criminal prosecution for the robbery in which he was a victim.  The witness previously heard the robber's voice through a mask, for only a few seconds, while lying on the floor with a gun pointed at his head, and he made the identification after the suppression hearing some 18 months after this frightening incident, and although he said at trial that he "absolutely" was certain the voices were the same, his testimony was terse and did not otherwise inspire confidence in the reliability of the identification.

However, *Strickland* prejudice simply cannot be found on the record.

**Prejudice**

In the context of a Sixth Amendment claim for failing to move to suppress an unreliable identification, the *Varner* case proscribed the following analysis:

> The prejudice component requires Thomas to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  He "need not show that counsel's deficient performance 'more likely than not altered the outcome in the case' – rather, he must show only 'a probability sufficient to

undermine confidence in the outcome.' " . . . "This standard is not a stringent
one." . . .  Although *Strickland* does not set a high bar with respect to the
prejudice inquiry, Thomas must show that he would likely have prevailed on the
suppression motion *and that, having prevailed, there is a reasonable likelihood
that he would not have been convicted*.  . . .

428 F.3d at 502 (parallel and other citations omitted).

  Had counsel moved to suppress the voice identification as tainted and unreliable, he may
have prevailed on the suppression motion and the identification may have been suppressed, but
there is no reasonable likelihood that he would not have been convicted in the absence of that
identification  – the other evidence against him is just too overwhelming.  The Court of Appeals
for the Third Circuit reviewed the record, and found that the testimony of Anthony Williams
*alone* was sufficient to convict him beyond a reasonable doubt.  *Askew*, 203 Fed. Appx. at 417-
18.  Additionally, the Court of Appeals remarked, "there is more" evidence to support the
convictions, namely Nicole Harris's testimony that she was the getaway driver in two of the four
robberies, and that both Williams and Anthony Askew participated in the armed robbery of the
USAir Federal Credit Union and the S & T Bank in Murrysville.  The Court of Appeals did not
even mention the voice identification or the evidence seized from Anthony Askew's residence at
1010 Maple Avenue, including a black vinyl bag similar to that used at the robbery of the S&T
Bank robbery on July 8, 2003 containing "cash money," and other "cash money" found in other
locations totaling $26,586, about half of the proceeds of the robbery, as well as a police scanner,
and a black and beige bag.

  All things considered, Mr. Fischer's testimony was not necessary to convict Mr. Askew,
and trial counsel's failure to move to suppress the identification as unduly suggestive and
inherently unreliable did not prejudice him because suppression of that evidence would not likely

have led to a different outcome.

### E.   Ineffective Assistance of Counsel For Failing to Object to "Perjured Testimony" of Anthony Williams and Nicole Harris

The "perjured testimony" about which petitioner complains is that Harris' and Williams' testimony that they dropped him off at his residence at 1010 Maple Avenue on July 8, 2003, was false, and that the prosecutor should have known that it was false because he was aware of SA Olohan's affidavit stating that a "black female got out of the Suburban carrying a black vinyl duffle bag and entered 1010 with the bag." (See section II B, supra). Mr. Askew further contends that his counsel was ineffective for failing to bring the alleged knowing use of perjured testimony to this Court's attention.

A review of the trial record reveals that Williams' and Harris' testimony in this regard was consistent with the descriptions of the black, male robbers, the investigation on July 8, 2003, and the person who left the Suburban SUV and entered 1010 Maple Avenue. The fact that Special Agent Olohan's affidavit inadvertently or mistakenly stated that the person was a "black female" does not establish that Williams and Harris committed perjury, and petitioner has nothing else upon which to base that claim.

Petitioner has made no showing of the use of perjured testimony against him, and counsel was not ineffective in failing to object on that basis.

### F.   Prosecutorial Misconduct Regarding Rule 404(b) Prior Crimes

Petitioner lastly claims that it was prosecutorial misconduct for the AUSA to offer Rule 404(b), other crimes evidence, against him for the sole and impermissible purpose of showing his

propensity to commit crimes.[6]  This issue is without merit.

The offending evidence was that petitioner was on house arrest during the period when the bank robberies took place, and that electronic monitoring logs showed that petitioner was not in his house (or, was out of range) at the specific times that two of the robberies occurred.  The Court denied petitioner's motion in limine to exclude that evidence, having carefully considered the relevance of that evidence to petitioner's opportunity to commit the crimes, and weighed it against the prejudice to him from having the jury learn that he had been involved in other criminal activity, although the jury did not know the nature of the previous activity.

The Court is satisfied that this Rule 404(b) evidence was properly admitted, and counsel was not ineffective in failing to exclude it.

---

[6] Petitioner did not preserve this issue and he does not couch it in the ineffective assistance of counsel rubric which would allow this Court to excuse the procedural default. Nevertheless, the Court will assume that petitioner meant to include it in his claims of ineffective assistance of counsel, and will address the issue on its merits, in that rubric.

**VI.      Conclusion**

For the reasons set forth above, the Motion to Vacate, files and records of the case conclusively show that petitioner is not entitled to relief.  Accordingly, there is no need to conduct an evidentiary hearing before determining that the Motion to Vacate should be denied. A separate order will be entered.

The Court will also issue a separate order granting petitioner's motion to proceed in forma pauperis, but denying his other pending motions as moot or as without merit for the reasons set forth in this memorandum opinion.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:

AnthonyAskew, Petitioner

07967-068

USP Hazelton

PO Box 2000

Bruceton Mills, WV 26525

all counsel of record