IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**

**Criminal No. 03-244-2**

**v.**

**ANTHONY ASKEW**


**MEMORANDUM ORDER DENYING ANTHONY ASKEW'S
MOTION FOR THE RETURN OF PROPERTY FOLLOWING MANDATE
FROM THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
(DOC. NO. 328)**

Before the Court is Anthony Askew's ("Askew's"), Motion for the Return of Property

Pursuant to Federal Rule of Criminal Procedure 41(g). Doc. no. 328. The Government filed a

response opposing this Motion. For the reasons set forth herein, Askew's Motion will be denied.

**I. Background**

**A. Factual Background**

This Court has recited the facts of this case many times over in its Opinions related to

Motions filed not only by Askew, but by his co-defendants as well. The Court will recite the

salient facts relevant to this Motion by quoting them from a prior Opinion denying one of

Askew's Motions to Vacate his Sentence under 28 U.S.C. § 2255. This Court has previously

noted that:

> In 2002 and 2003, there was a series of armed robberies at numerous
> financial institutions in Western Pennsylvania that followed a remarkably
> similar pattern. The modus operandi of these bank robberies was that two
> masked men would enter the bank, each with gun drawn, one
> of the men would cover the employees and patrons while the other jumped
> over the counter and riffled the drawers for cash, and then the two men
> would run to a waiting stolen vehicle and flee the scene. The 18-count
> Superseding Indictment filed on March 2, 2004 charged four persons
> with various offenses stemming from six of these bank robberies, as
> follows:

• Dollar Bank in Fox Chapel, Pennsylvania; August 1, 2002. Counts One through Three charged Anthony Williams and Maurice Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

• Dollar Bank, Penn Hills, Pennsylvania; September 3, 2002. Counts Four through Six charged Anthony Williams and Maurice Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

• USAir Credit Union, Moon Township, Pennsylvania; September 21, 2002. Counts Seven through Nine charged Anthony Williams and Anthony Askew (Maurice Askew's brother) with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

• S&T Bank, Plum Borough, Pennsylvania; November 21, 2002. Counts Ten through Twelve charged Anthony Williams and Anthony Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

• National City Bank, New Kensington, Pennsylvania; December 3, 2002. Counts Thirteen through Fifteen charged Anthony Williams and Anthony Askew with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 924(c)(1)(A)(ii), respectively.

• S&T Bank, Murrysville, Pennsylvania; July 8, 2003. Counts Sixteen through Eighteen charged Anthony Williams, Anthony Askew and Nicole Harris with bank robbery, armed bank robbery and carrying and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and

924(c)(1)(A)(ii), respectively.

> Anthony Williams was the gunman who jumped the counter and took the
> cash while one or the other of the Askew brothers stood guard in each
> robbery. Nicole Harris was the driver of the getaway car for the S&T
> bank robbery on July 8, 2003. Williams and Harris entered into plea
> agreements with the government and testified against the Askew brothers
> at their jury trial in May/ June 2004. The jury found the Askews guilty as
> charged on all counts of the Superseding Indictment, and this Court
> sentenced the two men . . .

Doc. no. 274, pp. 2-3.

### B. Procedural Background

Askew filed this Motion for the Return of Property on December 19, 2013. Doc. no. 328.

The Court denied this Motion, along with one of a series of Motions to Vacate on December 20,

2013. Doc. no. 331. Askew appealed this Court's decision to the United State Court of Appeals

for the Third Circuit. Doc. no. 332. At first, the Court of Appeals issued a Mandate affirming

this Court's decision (see doc. no. 337 affirming judgment/order of the District Court), but then

the Court of Appeals recalled that Mandate. Doc. no. 335. The Court of Appeals next entered a

Judgment vacating and remanding this Court's decision with respect to the instant Motion for

Return of Property, and an Opinion and a Mandate followed. Doc. nos. 341, 346.

Shortly after the filing of this Mandate, this Court reopened Askew's Motion for Return

of Property (doc. no 328) and ordered the Government to respond.[1] The Government filed its

---

[1] The Court also notes that on August 25, 2104, while Askew's Motion for Return of Property
was pending, he filed a Motion for Recusal or Disqualification, predicated upon the fact that he
did not receive a copy of one of the text orders allowing the government additional time to files
its response to his Motion for Return of Property. See doc. no. 353. Askew's Motion for
Recusal also indicated that he was seeking this Court's recusal because "of recently obtained
information "regarding the surprising, unheard-of and inappropriate actions of Judge Schwab."
Id. Askew indicates that this Court in a footnote in a recent Opinion written in Maurice Askew's
case noted that this Court married Harris and Williams, per their request, in October of 2005, a
year after the Askews' trial ended and sentencing hearings were held. Askew's Recusal Motion
incorrectly assumes that this Court had extensive and personal contact with Harris and Williams

Response on August 27, 2014 (see doc. no. 356), making the matter ripe for disposition.

### C. Askew's Pending Motion for Return of Property

Askew's current Motion before this Court seeks to recover a long list of personal items (*i.e.,* fifteen pairs of flex cuffs, a Uniden scanner, a yellow parka and gloves, a blue hooded jacket, a black vinyl bag, shooting targets, etc.) as well as money (*i.e.,* $2,010 U.S. Currency, $3,049 U.S. Currency, $323 U.S. Currency, and $21,233 U.S. Currency), which Askew claims were seized by the FBI from his apartment. Askew contends that under Fed.R.Crim.P. 41(g) he is entitled to have all of the aforementioned property returned. See doc. no. 328.

The Government's Response acknowledges that money and personal items were seized from Askew's apartment. However, the Government argues that under Rule 41(g) and given the fact present here, Askew is not entitled to the return of the money. Further, the Government notes that any personal items seized by the FBI from Askew's apartment were returned to his sister Alicia Askew thereby mooting that portion of his Rule 41(g) Motion.


## II. Standard of Review

Federal Rule of Criminal Procedure 41 reads in pertinent part as follows:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed.R.Crim.P. 41(g).

---

to "manage" and "plan" the wedding. The Court denied Askew's Motion for Recusal by way of text order dated August 26, 2014, but wanted to note, here, that there were no inappropriate communications between this Court and Williams and/or Harris before, during, or after the Askews' trial and sentencings.

If a motion for return of property is made while a criminal prosecution is pending, the burden is on the movant to show that he or she is entitled to the property. *U.S. v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999). Generally, a Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband, or subject to forfeiture or the government's need for the property as evidence continues. *Id.* The burden shifts to the Government when the criminal proceedings have terminated – at that point, the person from whom the property was seized is presumed to have a right to its return, and the Government must demonstrate that it has a legitimate reason to retain the property. *Id.*

Although Rule 41(g) provides that "[t]he court shall receive evidence on any issue of fact necessary to the decision of the motion," the two-part inquiry described in *Chambers* does not require that "a district court . . . necessarily conduct an evidentiary hearing on every Rule 41(g) motion." *Peloro v. U.S.*, 488 F.3d 163, 177 (3d Cir. 2007), quoting *United States v. Albinson,* 356 F.3d 278, 281 (3d Cir. 2004). A hearing is required only if needed to determine a "disputed issue of fact necessary to the resolution of the motion." *Id.*, quoting *Albinson,* 356 F.3d at 282. See also *Chambers*, 192 F.3d at 378.

The question of remedies should arise only after the District Court has investigated the status of the seized property. *Albinson*, 356 F.3d at 283. A motion for return of property is not rendered moot merely because the government no longer possesses the seized property. *Chambers*, 192 F.3d at 377. If the Government asserts that it no longer has the property sought, the District Court must determine, in fact, whether the Government retains possession of the property; if it finds that the Government no longer possesses the property, the District Court must determine what happened to the property. *Albinson*, 356 F.3d at 281.

## III. Discussion

Based on the above cited law, and the present status of Askew – who was convicted in 2004 of several crimes as noted above, and has been serving his sentence for years – it is clear that the burden is on the Government (because the criminal proceedings have terminated) to demonstrate that it has a legitimate reason to retain Askew's property. The Government has advanced four arguments as to why this Court should deny Askew's request for the return of his property at issue: (1) Askew is not legally entitled to some of the items; (2) he specifically disclaimed ownership as to a specific amount of currency; (3) the restitution order functioned as a lein over <u>any</u> currency seized form Askew's apartment; and (4) all remaining personal property items – not contraband – were returned to his sister.

### A. Askew is not Legally Entitled to the Return of Ill-Gotten Gains

First, the Government contends that Askew was never legally entitled to the currency removed from his apartment, and argues that the evidence of record supports a finding that it was the stolen property of S&T Bank. The Court concurs with this assessment.

Testimony from representatives of S&T Bank during the trial of Askew and his brother indicate that $56,814 in cash was stolen on July 8, 2003. Also during the trial, Anthony Williams (a co-defendant who testified against the Askew brothers at trial pursuant to a plea agreement) indicated that after he and Askew robbed S&T bank on July 8, 2003, they counted the proceeds and split it in half. Williams also testified that the FBI seized $26,586 (just over half of the stolen S&T money), from his apartment that day. During Askew's trial it was noted that almost all, if not all, of the cash found in the apartment belonged to the bank – not Askew.

This Court notes that in his Motion for the Return of Property shows Askew is requesting that a total of $26,605 be returned to him. See doc. no. 328, p. 1 ("Item #9 $2,010," "Item #10

$3,049," Item #11 $323," and "Item #17 $21,233" which, when added together, total $26,605). Thus, based on the evidence of record, the Court finds that this money was obtained from S&T Bank, and may not be returned to Askew as he is not legally entitled to it.

**B. Disclaimer of Ownership**

Second, as the Government notes in its Opposition to the Motion for Return, Askew specifically disclaimed ownership of $21,204 in cash seized by the FBI. A defendant who disclaims ownership of seized property lacks standing to seek its return. See *United States v. $39,557.00, More or Less, in U.S. Currency*, 683 F. Supp. 2d 335, 341-44 (D.N.J. 2010); see also *Arevalo v. United States*, No. 05-110, 2011 WL 442054, at *3-5 (E.D. Pa. Feb. 8, 2011).

During a suppression hearing and trial, Askew testified that he had never seen the black bag containing $21,204 prior to authorities finding it in his apartment closet. The Government has provided copies of the portions of the transcripts as Exhibits to its Opposition which verify that Askew did, in fact, disclaim that the money in the black bag was his. Moreover, Askew testified that either the FBI "planted" the black bag full of money his closet, or his brother's friend, "Joker," left the bag of money in the closet. Either way, based on the evidence of record, Askew specifically disclaimed that the money and the bag were his. Because of this, he now lacks standing to seek their return.

**C. The Court's Restitution Order**

Third, it is uncontested that this Court ordered Restitution in the amount of $400,000 as part of Askew's sentence. The Restitution Order entered by this Court functions as a lien over any currency seized from Askew's apartment that could be needed to satisfy that Order. See *United States v. Wallace*, 213 F. App'x 98, 99 (3d Cir. 2007) ("The order of restitution . . . constitutes a lien in favor of the United States on all of [defendant's] property"); 18 U.S.C. §

3613(c) ("[A]n order of restitution made pursuant to section[ ] ... 3663 ... is a lien in favor of the United States on all property and rights to property of the person fined").

The Government has supplied documentary evidence that shows that a total of $56,789.03 has been paid (to date) toward Askew's, Williams', and Harris' restitution obligations. Because the full amount of Askew's restitution has not yet been paid, the Court finds that any proceeds that were seized from Askew's apartment and made the subject of his Rule 41(g) Motion to which he may be legally entitled to recover and did not otherwise disclaim, cannot be returned given this Court's Restitution Order and the outstanding balance due to satisfy the restitution portion of his sentence.

**D. Askew's Personal Property**

As noted above, Askew's personal items that have no ties to the crimes for which he was convicted and sentenced should legally be returned. In its Opposition to Askew's Motion for Return of Property, the Government claims that the personal items were returned and thus, this portion of Askew's Motion is moot.

The Court notes that both *Albinson* and *Chambers* discuss the District Court's obligation to ascertain "what happened" to the property in question. In *Albinson*, the United States Court of Appeals for the Third Circuit remanded because – while it was undisputed in that case that the government no longer possessed the property in issue – the Court of Appeals held that the District Court "did not address the remainder of the *Chambers* inquiry regarding 'what happened to the property.' " *Albinson*, 356 F.3d at 282, quoting *Chambers*, 192 F.3d at 378.

Turning to the instant matter, the Government contends that the FBI returned all of Askew's personal property to his sister, Alicia Askew. In support of this contention, Patrick McGlennon, an FBI Special Agent, submitted an affidavit stating that on April 10, 2010 he

personally released items seized from Askew's home on July 8, 2003 to Askew's sister. See doc.

no. 356-3. He noted that there were thirteen items returned to Askew's sister on that date, and

attached the "Receipt for Property Released" which further identified the thirteen items as

follows:

1. Uniden Warranty Card
2. Verizon Phone Bill
3. Child Support Notice
4. Piece of paper with numbers on it
5. Hospital Bill
6. Yellow parka
7. 1 Pair of Brown Boots
8. Black/Brown Satchel
9. Blue Hood Jacket
10. Black vinyl bag with strap
11. Flex Cuffs – 15 pieces
12. Paper shooting targets – used
13. Uniden scanner w- transformer/charger

Doc. no. 356-3.

The Court's finds that the list of returned personal items is identical to the list of personal

items provided by Askew in his Motion. The Court also finds that the FBI Special Agent

McGlennon's affidavit, coupled with his handwritten "Receipt for Property Released" dated

April 10, 2010, constitute verified documentary evidence that the personal items at issue have

been returned. This Court is satisfied that Askew's representative (his sister) was given his

personal (non-monetary) items, the Government is now and has been dispossessed of them for

some time and thus, this portion of Askew's Motion to Return is moot.

**IV. Conclusion**

The Court will deny Askew's Motion for Return of Property because there is ample

evidence of record to support that he disclaimed ownership interest in the money and/or he is not

legally entitled to return of monetary property for the reasons set forth above.  The portion of his

Motion which seeks a return of his personal items is deemed moot given the verified

documentary evidence supplied by the Government that said items were, in fact, returned on

April 10, 2010.


**ORDER**

AND NOW, this 29th day of August 2014, Askew's Motion to Motion For The Return Of

Property (doc. no. 328) is **DENIED**.


s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties

       Anthony Askew, Pro Se Petitioner
       07967 068
       USP Hazelton
       PO Box 2000
       Bruceton Mills, WV 26525